UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

<u>In Re</u>:

FELICIA R. BOLDEN,

      Debtor.                          Case No: 12-14979

_____/       Hon. Victoria A. Roberts

CAPITAL ONE AUTO FINANCE
INCORPORATED,

      Appellant,

vs

FELICIA R. BOLDEN,

      Appellee.

_____/

**OPINION AND ORDER AFFIRMING DECISION OF BANKRUPTCY COURT**

**I.    OVERVIEW**

      This appeal arises from Capital One's apparent confusion over the disposition of

Felicia Bolden's outstanding debt to Capital One under Bolden's Chapter 13 Plan (the

"Plan").  Bolden could have described the debt as "crammed down" under 11 U.S.C. §

1325 (a)(5).  She did not.  The Plan - not objected to by Capital One - and confirmed by

the Bankruptcy Court - described Capital One's debt as "Modified"  under 11 U.S.C. §

1322(b)(2).  Chapter 13 Plan, Section I.D. 5.a.

      Under bankruptcy law, modified and crammed down have different meanings and

different governing laws.  In this appeal, Capital One urges the Court to follow the law

governing crammed down claims.  Indeed, nearly all of the cases relied upon by Capital

One are crammed down cases.  However, Capital One cannot avail itself of crammed

down law; it did not object to the modification of its debt under 11 U.S.C. § 1322(b)(2).

The Bankruptcy Court correctly ordered Capital One to: (1) cease attempts to

collect the balance of an auto loan Capital One made to Felicia Bolden; and (2) release

its lien on Bolden's car.

The decision of the Bankruptcy Court is **AFFIRMED**.

After a hearing, the Bankruptcy Court found that under the Plan: (1) the Capital

One loan was permanently "modified" to the agreed amount of $17,468.87, and (2) after

Bolden's successful completion of payments to Capital One, Capital One would not be

entitled to any more money from Bolden; the loan would be deemed paid in full.

On September 6, 2012, Capital One filed its notice of appeal, arguing that it is

entitled to recoup its loss due to the decrease in interest. Capital One says:

> There is no dispute that under nonbankruptcy law, the underlying contract on
> which Capital One's claim is based, required application of an interest rate
> of 17.45%, while payments under the Chapter 13 Plan were paid at an
> interest rate of 7.5%.  As a result, the payments under the Chapter 13 Plan
> fell significantly short of the payments required by the contract or
> nonbankruptcy law.  As such, under the clear and express terms of §
> 1325(a)(5)(B)(i)(I)(aa), Capital One's lien is not subject to release and
> remains valid and enforceable.

Br. for Appellant, Doc. 5 at 10.

In its brief, Capital One admitted that it did not dispute that it was bound by the

terms of the Confirmed Plan; it never challenged or objected to the Confirmed Plan;

and, did not argue that the terms of the Plan were inconsistent with bankruptcy law.  It

says "Neither the monetary treatment of the secured claim nor the interest rate

warranted an objection . . . ."  Reply Br. for Appellant, Doc. 12, at 3.  Capital One asks

2

the Court to enforce the terms of the Plan as written.

At the Court's request, Capital One filed a supplemental brief setting forth various Findings of Fact and Conclusions of Law which its says the Bankruptcy Court made in error.  This is the essence of Capital One's argument:

1.    Certain language in the Plan is ambiguous and the Bankruptcy Court should never have held that the treatment of Capital One's debt was clearly described.

2.    Nothing in the Plan required Capital One to release its debt after Bolden made all payments under it.  The language in the Plan upon which Capital One relies to support its conclusion is found in Paragraph II.B of the Plan. It states, "[A]ll secured creditors shall retain the liens securing their claims unless otherwise stated."  Given this language, the Bankruptcy Court erred in concluding that 11 U.S.C. § 1327 required Capital One to release its lien.  Also, the Bankruptcy Court's decision runs afoul of 11 U.S.C. § 1325 (a)(5)(B)(i)(I)(aa) and (bb).

3.    Capital One was deprived of due process regarding the release of its lien; the Plan failed to give it notice reasonably calculated, under all circumstances, to apprise it of the pendency of the action and afford it an opportunity to present objections.

For the following reasons, all of Capital One's arguments fail.  The Plan was not ambiguous; Capital One agreed to a permanent modification of its loan; it was not deprived of due process; and, Capital One relies on crammed down law, which does not pertain to the loan modification as agreed to.

3

## II.    BACKGROUND

On November 13, 2004, Capital One financed Bolden's purchase of a 2004 Pontiac Grand Prix for $18, 640.86 at an interest rate of 17.45%.  Capital One retained a lien on the car.

On January 15, 2007,  Bolden filed for Chapter 13 bankruptcy, along with a proposed Chapter 13 Plan to pay her debts.  Then, Bolden owed $16,075.57 in principal on her Capital One loan.

The Plan made clear that Bolden's auto loan would be "modified;" this modification reduced both the principal and the interest rate.  The proposal said Bolden would pay $10,000 -- the fair market value of the car at the time -- at a lower interest rate of 7.5%, over a period of thirty-eight months, making her total payments to Capital One $17,468.87.  This was slightly above the principal amount due.  The Plan also said that there were no unsecured creditors and all unsecured claims would be considered paid.  Bolden was required to complete the overall Plan, repaying all creditors within forty-eight months.

Capital One did not object to either the reduced principal or interest rate under the Plan.  On April 20, 2007, the Bankruptcy Court confirmed the proposed Plan.

Bolden made all payments as agreed; the modified auto loan was paid in full in 2010.  On January 4, 2012, the bankruptcy trustee sent notice to all creditors saying that Bolden completed the Plan.

On May 12, 2012, Bolden filed a Motion to Reopen her Chapter 13 case and a Motion to Release Lien of Capital One Auto Finance and to Bar Further Collection.  The Bankruptcy Court held a hearing.  Bolden argued that she was entitled to a discharge,

4

not by grant of statute, but because the Plan says that her loan was modified, and thus, paid in full.  On August 24, 2012, the Bankruptcy Court granted both motions.  Capital One now appeals.

## III.  STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy courts. *See* 28 U.S.C. § 158(a)(1).

The District Court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Holland*, 151 F.3d 547, 548 (6th Cir. 1998); Bankruptcy Rule 8013 ("[the bankruptcy court's] [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").

## IV.  ANALYSIS

### A.    CHAPTER 13 BANKRUPTCY

#### 1.  Statutory Overview

Bolden filed for Chapter 13 Bankruptcy.  Chapter 13 Bankruptcy allows a debtor with "regular income to propose a repayment plan extending and/or reducing the balance of her obligations, thereby averting a loss of assets through Chapter 7 liquidation." *In re Nolan*, 232 F.3d 528, 529 (6th Cir. 2000).

Following a debtor's proposal of a plan, the proposed plan must be confirmed if among other things: (1) the creditor accepts the proposed plan, (2) the creditor's rights are crammed down, or (3) the debtor releases the collateral.  11 U.S.C. § 1325.

Here, creditor Capital One accepted the Plan.

### B.    CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW

5

1.      **The Plan Is Not Ambiguous**

Capital One argues the Bankruptcy Court clearly erred in its interpretation of

Section I.D.5.a.  This section reads:

I.      **PLAN PAYMENTS & DISBURSEMENTS**

This is the debtor's latest Chapter 13 Plan.  The following classes of claims are
established for payments from funds available by the Trustee except those
identified as "direct payments" as indicated herein.

. . .

D. Treatment of claims
1. . . .
2. . . .
3. . . .
4. . . .
5.      Class five – **Non Continuing Secured Claims**: Secured
claims other than those listed in Class Two and Four on
which the last payment will become due within the Plan
duration.

a.      **Purchase Money Security Interest In Personal
Property**: Secured claims other than those listed in
Classes Two and Four and Five b. on which the last
payment will become due within the Plan duration.
Adequate protection payments shall be paid until such
time as funds become available to pay equal monthly
payments over the remaining length of the plan.

| Creditor/Collateral | "Crammed down" [11 U.S.C. 1325(a)(5)] or modified [11 U.S.C. 1322(b)(2)] Indicate Which | Market **Value** | Interest **Rate** | Monthly Payment (Incl. Interest) | Total to pay (Incl. Interest) | Number of months from confirmation date |
|---|---|---|---|---|---|---|
| **Capital One Auto Finance** **Automobile: 2004 Grand Prix** | **Modified** | **$10,000.** | **7.5%** | **459.71** | **$17,468.87** | **38** |

None of this language is ambiguous.

The Capital One loan is described as modified under 11 U.S.C. 1322(b)(2), and

not crammed down under 11 U.S.C. § 1325(a)(5).  The loan, as modified, has a market

6

value of $10,000.00, an interest rate of 7.5%, 38 monthly payments of $459.71 and a total payout of $17,468.87.

Any alleged ambiguity exists because Capital One lacks a clear understanding of the difference between crammed down and modified.

### a.    Crammed Down Under 11 U.S.C. § 1325 (a)(5)

"Cramming down a loan is a bankruptcy term used when a plan is confirmed over a claim holder's objection." *In re Shepherd*, 381 B.R. 675, 677 (Bankr. E.D.Tenn 2008). However, when a claim is crammed down, the plan must provide the creditor with lien retention, payment for the value of the allowed claim, and payment within the terms of the plan.  11 U.S.C.  §1325(a)(5)(B).

Under a Chapter 13 Plan, a secured creditor's claim can be "bifurcated."  This means that a secured creditor's claim is secured to the extent of the fair market value of the property.  *See* 11 U.S.C. § 506(a).  Beyond that amount, the balance the debtor owes gets treated as a separate, unsecured claim. *See id;* see generally, 4 Collier On Bankruptcy ¶ 506.03 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2007).

At the end of a plan with a crammed down claim, a Bankruptcy Court will hold a hearing to determine if the debtor is entitled to a discharge.  If the debtor is entitled to a discharge, the unsecured amount is cleared.  If the debtor is not entitled to a discharge, the debtor is required to pay the unsecured portion and a lien may be retained.

This Plan clearly establishes that this loan was not crammed down.   Chapter 13 Plan, Section I.D. 5.a.

### b.    Modified Under 11 U.S.C. 1322 (b)(2)

7

Section 1322(b)(2) allows for the modification of rights of creditors.  11 U.S.C. § 1322(b)(2); see also *In re Johnson*, 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006).  The modifications may include altering the payment terms and the interest rate of a loan. *In re Hopkins*, 371 B.R. 324, 326 (N.D.Ill. 2007).  A debtor who is not entitled to a discharge may still permanently modify a loan in a bankruptcy plan.  *Id.* at 327.

The only way that Capital One could remotely have the outcome it advocates in this appeal, is if its interest were bifurcated, while being crammed down, through the Plan, under 11 U.S.C. § 1325(a)(5).  But, that did not happen; its interest was modified under 11 U.S.C. § 1322(b)(2).

Capital One was given the opportunity to explain its understanding of the treatment of its loan in this exchange it had with the Bankruptcy Court during the motion hearing held June 6, 2012:

> The Court: What does the word modify mean in the – in the plan then?
>
> Capital One: That means you're going to – your claim will be paid – your claim amount will be paid in full as opposed to being crammed down . . . It would be no different if they [sic] proposed a cram down value and had an unsecured portion of the secured claim and then get to the end of the case and you're not entitled to a discharge.  That balance is still owing, it wasn't paid off pursuant to non-bankruptcy law.

Br. for Appellant, Doc. 6, Ex. 9 at 5-6.

Capital One's own statement establishes that it knew -- or should have known -- that its balance was being "modified" to $17, 468.87. Its representation indicates that it believed that if a loan is crammed down and bifurcated, and the debtor ultimately does not qualify for a discharge, only then would the debtor owe full principal and full interest.

8

The description of modified under 11 U.S.C. § 1322(b)(2), coupled with the fact that no unsecured debt was listed in the Plan, undoubtedly establishes that Bolden intended -- and Capital One knew and agreed -- that the loan would be permanently modified to the stated amount of $17,468.87.

There is no ambiguity in the Plan language.

### 2. The Bankruptcy Court Did Not Erroneously Rely upon 11 U.S.C. § 1327 or Disregard the Language of 11 U.S.C. § 1325 (a)(5)(B)(i)(I)(aa) and (bb) in Concluding That Capital One Released its Lien

This Plan was confirmed by the Bankruptcy Court in accordance with 11 U.S.C. § 1327(a). It states that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan." 11 U.S.C. § 1327; *In Re: Wellman*, 322, B.R. 298, 301 (6th Cir. BAP 2004). In addition to the terms of the confirmed plan, the parties are bound by the values assigned to the collateral and the amount of payment to be received.

The Bankruptcy Court correctly found that Bolden paid Capital One's debt in full, according to the terms of her confirmed Plan, and that she was entitled to a release of Capital One's lien.

Section 1327 provides full authority for a conclusion that Capital Ones required to release its lien because the loan was modified and not crammed down. Had it been crammed down, the Plan would have stated a bifurcated loan, and an unsecured part for which Bolden would remain responsible after completion of the Plan. This unsecured part -- presumably -- would have been the part on which a lien would be

9

retained, unless discharged in bankruptcy or paid in accordance with nonbankruptcy

law.  *See* 11 U.S.C. §506 (a).

There is no term in the Plan which allows Capital One to retain its lien. Capital

One's reliance on language in the General Provisions of the Plan is unavailing.  It is this

provision which Capital One says the Bankruptcy Court failed to enforce:

> Upon <u>confirmation of the Plan</u>, all property of the estate shall vest in the
> debtor [11 U.S.C. §1327(b)].  The debtor shall remain in possession of all
> property of the estate <u>during the pendency of this case </u>unless specifically
> provided herein [11 U.S.C. §1306(b)].  All secured creditors shall retain the
> liens securing their claims unless otherwise stated.

Chapter 13 Plan, Section II.B (emphasis added).

Contrary to Capital One's position, the Plan <u>does</u> "otherwise state" that its lien is

not retained past Bolden's completion, simply by the terms of the unobjected to,

modified Plan.  Capital One's claim was deemed "paid in full" upon Bolden's successful

completion of payments.

The Bankruptcy Court did not err in making this finding.

Nor is the Bankruptcy Court's holding inconsistent with 11 U.S.C. §

1325(a)(5)(B)(i).  In fact, that provision would only apply if this modified loan had been

forced upon Capital One as a crammed down one.

This Plan was confirmed under 11 U.S.C. § 1325(A) - which Capital One doesn't

cite - and §1322(b)(2). §1322(b)(2) allows for plans which modify the "rights of holders

of secured claims . . . ." *Id.*

11 U.S.C. § 1325(a)(5)(A) then allows for confirmation of such plans with respect

to each allowed secured claim provided for by the plan "- [where] (A) the holder of such

10

claim has accepted the plan." *Id.* This is precisely what Capital One did by its
agreement to a modified loan under 11 U.S.C. § 1322(b)(2).

Capital One's appeal now hinges entirely on its reliance on § 1325(a)(5)(B). This
section discusses retention of liens until a bankruptcy discharge or payment of debt
under nonbankruptcy law. It does not apply here.

*In Re Lilly* 378 B.R. 232 (Bankr. C.D. Ill 2007), a case relied heavily on by
Capital One, makes clear that the lien retention provision: "Must be viewed in context,
as the first of three elements of cramdown, whereby a plan may be confirmed over the
objection of a secured creditor." *Id.* at 234.

Other cases cited by Capital One deal only with crammed down loans, and are
inapplicable: *In Re Harrison,* 394 B.R. 870 (N.D. Ill. 2008) and *In Re Gerardin* 447 B.R.
332 (S.D. Fla. 2011).

The Bankruptcy Court did not err in light of Capital One's failure to object.

Alternatively, Capital One says that it did not object to the Plan because the law
prohibits its "910" claim from being crammed down. Bolden argues that this provision is
not applicable given that Capital One accepted, and did not object to the Plan's
treatment of its monetary claim or interest.

Section "1325(a) [] provides protection from cram down for secured creditors with
PMSIs in vehicles acquired by a debtor for personal use within 910 days prior to the
bankruptcy filing[,]" *In re Muldrew*, 396 B.R. 915, 917 (E.D.Mich. 2008):

> For purposes of paragraph (5), section 506 shall not apply to a claim in that
> paragraph if the creditor has a purchase money security interest securing the
> debt that is the subject of the claim, the debt was incurred within the 910-day
> period preceding the date of the filing of the petition, and the collateral for
> that debt consists of a motor vehicle . . . acquired for the personal use of the

11

debtor . . . .

11 U.S.C. § 1325(a).

> "[T]hrough the BAPCPA amendments to § 1325(a)(5), Congress was attempting to remedy a perceived abuse by those who buy vehicles on credit on the eve of bankruptcy and then utilize the cramdown provisions of the Bankruptcy Code to pay the secured creditor a lesser amount than its full claim."

*In re Payne*, 347 B.R. 278, 281 (Bankr. S.D. Ohio 2006).

This argument is improperly before the Court. Capital One has not established that Bolden is a 910 debtor. And, Capital One could have but did not argue during any of the bankruptcy proceedings, that its loan was a 910 debt.

Even if the argument were properly before this Court, it would be unavailing; nothing prevents a 910 debtor from modifying her interest rate. *See* 11 U.S.C. § 1322(b)(2) (a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."); see also *In re Hopkins* (a 910 debtor who is not entitled to a discharge may permanently modify a creditor's interest in a bankruptcy plan). And, importantly, Capital One's sole argument on appeal is that it is entitled to recoup its loss due to the decrease in interest.

### 3.   Capital One Was Not Deprived of Due Process

Due process requires notice 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. ___, (2010) (quoting, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

Capital One cites a string of cases which hold that absent an express provision

12

providing for discharge of student loans in a plan, the determination of dischargeability of student loans may only be granted through an adversary proceeding. This argument misapprehends the decision of the Bankruptcy Court; the court did not discharge Capital One's debt; Capital One agreed to its modification after being extended sufficient due process.

To provide adequate notice and comply with due process, a plan must "[1] clearly and accurately characterize the creditor's claim and (2) give the creditor an explanation of what the debtor proposes to do and the factual and legal basis on which his proposal is based." *In Re Best*, No. 07-60139, 2012 Bankr. LEXIS 3064, at *17-18 (Bankr. S.D. Ga. July 5, 2012). Capital One's loan was clearly described in the Plan.

Bolden listed Capital One's debt as "modified." Capital One conceded that it understood modified to mean paid in full. The Plan also cited to the statute which controlled the modification as 11 U.S.C. § 1322(b)(2), not the crammed down statute, 11 U.S.C. § 1325(a)(5). And, Capital One accepted the Plan knowing that its claim would be paid in full if Bolden did not default.

Finally, the Bankruptcy Court conducted an adversarial hearing. At the hearing, Capital One argued its reasons for why it thought it was entitled to collect the interest. And, Bolden argued why the claim was paid in full.

The Bankruptcy Court did not err; there was no due process violation.

**V.    CONCLUSION**

Capital One's misplaced appeal relies entirely on the erroneous premise that Capital One could retain its lien on Bolden's car, despite the fact that she made all payments as agreed, under an unobjected to, modified Chapter 13 Plan under 11 U.S.C. § 1322(b)(2).

13

The only way Capital One could have retained its lien is if the Plan was confirmed over its objection, i.e. crammed down.  *See* 11 U.S.C. § 1325 (a)(5)(B); *In Re Lilly*, 378 B.R. 232 (Bankr. C.D. 111 2007).

Capital One did not object; its claim was not crammed down.

The Bankruptcy Court made no erroneous Findings of Fact; its Conclusions of Law were sound.

For these reasons, the Bankruptcy Court is **AFFIRMED.**

**IT IS ORDERED.**

**S/Victoria A. Roberts**
**Victoria A. Roberts**
**United States District Judge**

**Dated:  July 29, 2013**

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 29, 2013.**

**S/Carol A. Pinegar**
**Deputy Clerk**

14